```
               UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA

                        AT CHARLESTON


JAMES STRAWN and
JAMES STATON, individually
and on behalf of all others
similarly situated,

        Plaintiffs,

v.                                    Civil Action No. 2:06-0988

AT&T MOBILITY, INC.,
f/k/a CINGULAR WIRELESS LLC,¹

        Defendant.
```

## MEMORANDUM OPINION AND ORDER

Pending is the renewed motion to compel arbitration and dismiss the complaint pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, filed by defendant AT&T Mobility, Inc., on August 8, 2008. Plaintiffs James Strawn and James Staton responded to the renewed motion to compel arbitration and dismiss the complaint on December 16, 2008.

---

¹On January 8, 2007, the name of Cingular Wireless LLC was changed to AT&T Mobility LLC. The defendant is referred to throughout as "AT&T."

I.

In 2005, Strawn and Staton contracted with AT&T to receive mobile telecommunications services. The Terms of Service booklets governing the parties' legal relationship each contain an identical arbitration provision which provides, <u>inter alia</u>, as follows:

> [AT&T] and you . . . agree to arbitrate all disputes and claims . . . arising out of or relating to this Agreement, or to any prior oral or written agreement . . . between [AT&T] and you.  Notwithstanding the foregoing, either party may bring an individual action in small claims court. . . . You and [AT&T] agree that YOU AND [AT&T] MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding.

(Exs. A-3, A-4, at 10, 12, Def.'s Memo. in Supp. of Mot. to Compel. Arb.). The arbitration provision further stated, <u>inter alia</u>, that if the customer is awarded the amount of his claim or more, AT&T must pay his attorney fees.

The arbitration provision has since been revised by AT&T. The revisions, which are applicable to Strawn and Staton, offer a number of benefits beyond a simple agreement to alternative dispute resolution: (1) arbitration is held in the county of the customer's billing address, (2) AT&T pays the costs associated with the arbitration unless the arbitrator finds that

2

the claim or the relief sought is frivolous or improper, (3) the arbitrator is not precluded from awarding punitive damages, (4) customers may pursue relief in small claims court instead, (5) if an arbitrator awards a customer $5,000 or less and that award is more than AT&T's last written settlement offer before an arbitrator was selected, AT&T will pay the customer $5,000 in lieu of the arbitration award ("the premium provision") and pay the customer's lawyer twice the amount of attorney fees reasonably accrued for investigating, preparing, and pursuing the customer's claim in arbitration ("the lawyer premium provision"), and (6) if the claim is for $10,000 or less, the customer chooses whether the arbitration will be conducted by a telephonic or in-person hearing or by the written submissions of the parties.

At some point, Strawn and Staton noticed that AT&T imposed a $2.99 monthly charge for a "roadside assistance" service plan that they never requested.  (Compl. ¶¶ 1, 5). Strawn and Staton learned that they had to identify the charge and affirmatively opt out in order to avoid being billed the $2.99 monthly fee.  (Id. ¶ 5).  The benefits of the roadside assistance plan "include towing service, . . . [dead] battery service, flat tire assistance, fuel delivery service, lockout assistance, and key replacement."  (Id. ¶ 4).

On September 12, 2006, Strawn and Staton instituted this class action in the Circuit Court of Kanawha County alleging that the $2.99 monthly fee constituted an unfair or deceptive act or practice in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), West Virginia Code §§ 46A-1-101, et seq. (Compl. ¶¶ 40-45). The damages requested far exceed reimbursement of the monthly fee. Strawn and Staton allege that neither they nor their putative fellow class members seek damages exceeding $75,000 apiece or $5 million collectively. (See Compl. ¶¶ 13-15, 16; Compl. exs. A, B, C). The specific amount sought is not stated in the complaint. Strawn and Staton disavow any claim to punitive damages.

On November 21, 2006, AT&T removed based on jurisdiction putatively conferred by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (Not. of Rem. ¶¶ 4, 10-12). Strawn and Staton moved to remand. The court concluded that AT&T failed to demonstrate that the amount in controversy exceeded the sum or value of $5 million, exclusive of interest and costs, the jurisdictional threshold established by CAFA.

AT&T appealed. The court of appeals concluded as follows:

> Therefore, taking (1) the challenged practice as
> alleged in the complaint, (2) the definition of the

4

> class consisting of persons who were victims of the challenged practice, and (3) AT&T's data about the number of persons fitting that class, which were established by affidavit and remained unchallenged, AT&T demonstrated that the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and therefore that <u>the jurisdictional amount under CAFA is satisfied</u>.

Strawn v. AT & T Mobility LLC, 530 F.3d 293, 299 (4th Cir. 2008) (emphasis supplied).[2]

Prior to the appeal, and now following remand, AT&T contends that Strawn and Staton should be compelled to arbitrate their claims or pursue them in "small claims court" pursuant to the arbitration provision.[3]

---

[2]Strawn and Staton moved to permit jurisdictional discovery following remand by the court of appeals. Inasmuch as the court of appeals concluded that subject matter jurisdiction was appropriately alleged, the request is not well taken.

[3]Strawn and Staton contend their claims exceed the jurisdictional maximum of the state magistrate court system, the equivalent of "small claims court." The small claims alternative is thus not available.

II.

A.  Federal Arbitration Act

AT&T relies upon the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-16. The FAA establishes a "strong federal public policy in favor of enforcing arbitration agreements," and is designed to "ensure judicial enforcement of privately made agreements to arbitrate." See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217-219 (1985). Congress enacted the FAA in 1925 in order "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts." Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 639 (4th Cir. 2002) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). "Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (citing Hightower v. GMRI, Inc., 272 F.3d 239, 241 (4th Cir. 2001)).

The FAA provides that arbitration clauses in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." See 9 U.S.C. § 2. "The FAA mandates that if parties execute a valid agreement to arbitrate disputes, a federal court must compel arbitration." See Sydnor v. Conseco Financial Servicing Corp., 252 F.3d 302, 305 (4th Cir. 2001). A party can compel arbitration under the FAA if it establishes: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision purporting to cover the dispute and that is enforceable under general principles of contract law, (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of a party to arbitrate the dispute. American Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005).

It is clear that "'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" Adkins, 303 F.3d at 500 (quoting Volt Inf. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ., 489 U.S. 468, 475-476 (1989)). Moreover, federal courts must apply the FAA to arbitration agreements arising in consumer cases. See

Green Tree Financial Corp. v. Randolph, 531 U.S. 79 (2000) (arbitration agreement in a mobile home financing contract); Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265 (1995) (arbitration agreement in a residential termite protection plan); Snowden, 290 F.3d at 631 (arbitration agreement in loan agreement); Sydnor, 252 F.3d at 302 (arbitration agreement in a financing contract for home improvements).

      The United States Court of Appeals for the Fourth Circuit observed in Adkins that "'even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate.'" Adkins, 303 F.3d at 501 (quoting Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997)). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." Id. at 501 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)); see also Sydnor, 252 F.3d at 305 (citation omitted). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. See Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681 (1996) (citations omitted).

Strawn and Staton dispute the existence of only one of the four prerequisites for compelling arbitration, namely, whether an enforceable arbitration provision exists under general principles of contract law.  They contend the arbitration provision is unenforceable based upon State ex rel. Dunlap v. Berger, 211 W. Va. 549, 567 S.E.2d 265 (2002).  The Dunlap case involved an alleged deceptive and illegal loan packing scheme.  Class members were harmed by the surreptitious addition of unauthorized insurance charges to their jewelry purchases.  Dunlap was illegally charged $1.48 for credit life insurance and $6.96 for property insurance.  Dunlap instituted an action alleging state statutory and common-law claims.  He sought certification of a class of similarly situated aggrieved former customers.  The circuit court compelled arbitration pursuant to the parties' form agreement executed at the time of Dunlap's purchase.

Dunlap contended that "several prohibitions on and/or limitations of his rights and remedies -- that are part of Paragraph 14 in Friedman's purchase and financing agreement document -- [we]re unconscionable exculpatory provisions in a contract of adhesion."  Id. at 560, 567 S.E.2d at 276.  The Supreme Court of Appeals of West Virginia observed as follows:

9

> Class action relief . . . is often at the core of the effective prosecution of consumer, employment, housing, environmental, and similar cases. . . .
>
> In Mr. Dunlap's case, the total of $8.46 . . . is precisely the sort of small-dollar/high volume (alleged) illegality that class action claims and remedies are effective at addressing.  In many cases, the availability of class action relief is a <u>sine qua non</u> to permit the adequate vindication of consumer rights.
>
> Thus, in the contracts of adhesion that are so commonly involved in consumer and employment transactions, permitting the proponent of such a contract to include a provision that prevents an aggrieved party from pursuing class action relief would go a long way toward allowing those who commit illegal activity to go unpunished, undeterred, and unaccountable.
>
> . . . .
>
> In the instant case, we conclude that the prohibitions on punitive damages and class action relief that would be the result of the application of the provisions of Friedman's purchase and finance agreement are clearly unconscionable.

<u>Id.</u> at 562-63, 564, 567 S.E.2d at 278-79, 280.

The court of appeals has observed that "To the extent . . . . <u>Dunlap</u> intends to fashion a broad prohibition against the arbitrability of state-law claims, such a ruling, whether dicta or otherwise, cannot contravene the FAA."  <u>American General Life and Acc. Ins. Co. v. Wood</u>, 429 F.3d 83, 90 (4th Cir. 2005).  Specific to class action waivers, the decision in <u>Schultz v. AT&T Wireless Services, Inc.</u>, 376 F. Supp.2d 685 (N.D. W. Va. 2005),

interprets Dunlap narrowly and, importantly, in a manner consistent with the overwhelming weight of the federal authority interpreting the FAA.

In Schultz, the court noted that Dunlap involved a plaintiff/consumer seeking to assert a high volume/low dollar class action consumer claim.  Id. at 690.  The plaintiff in Schultz was not asserting a high volume/low dollar claim but instead sought to recover an amount in excess of $75,000.00.  Based upon that distinction, the district court concluded that the plaintiff there, unlike Dunlap, had no need to proceed as a class claimant but could, as an individual claimant, "effectively and cost-efficiently vindicate his rights through arbitration" and, for that reason, "the facts . . . [did] not appear to implicate the holding in Dunlap."[4]  Id. at 690-91.

---

[4]It is noteworthy that the courts of appeal, including our own, are nearly unanimous in upholding a waiver of collective litigation in favor of an otherwise binding arbitration provision.  See Adkins, 303 F.3d 503 (upholding this court's decision that plaintiff's inability to pursue class action relief in an arbitration proceeding did not render the arbitration agreement invalid); Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 638 (4th Cir. 2002)(rejecting argument that arbitration agreement was unenforceable due to inability to bring class action); see also Pleasants v. American Exp. Co., 541 F.3d 853, 859 (8th Cir. 2008); Gay v. CreditInform, 511 F.3d 369, 395 (3d Cir. 2007); Jenkins v. First Am. Cash Advance, 400 F.3d 868, 878 (11th Cir. 2005); Livingston v. Associates Fin., Inc., 339 F.3d 553, 559 (7th Cir. 2003); Snowden v. CheckPoint Check Cashing,
(continued...)

As in Shultz, Strawn and Staton are not asserting high volume/low dollar claims. They seek a significant amount of damages limited only by their insistence that neither they, nor their putative fellow class members, seek sums exceeding $75,000 apiece or $5 million collectively. (Compl. 15-17). In their most recently filed brief, Strawn and Staton contend that they can each recover a minimum amount of $200 in damages under the WVCCPA, along with a further $1,000 penalty under that statute. With an adjustment of the $1,200 for inflation as permitted by the WVCCPA, Strawn and Staton contend that their "claims as of January 31, 2008, total $5,170.59 each, exclusive of any interest, costs, or attorney fees" to which they are entitled. (Pls.' Resp. to Renew'd Mot. to Compel at 11). Thus, as in Schultz, the decision in Dunlap is distinguishable.

Strawn and Staton offer additional arguments in an attempt to demonstrate that the arbitration provision is unconscionable. First, they assert that the ability to institute a small claims case is illusory inasmuch as the damages they personally suffered exceed the West Virginia jurisdictional

---

⁴(...continued)
290 F.3d 631, 638-39 (4th Cir. 2002); Randolph v. Green Tree Fin. Corp., 244 F.3d 814, 818 (11th Cir. 2001). But see Lowden v. T-Mobile USA, Inc., 512 F.3d 1213, 1221 n.3 (9th Cir. 2008).

maximum for magistrate court. It is, of course, the Legislature, not AT&T, that sets the magistrate court jurisdictional maximum. That observation aside, an unconscionability finding on the suggested basis might encourage aggrieved AT&T customers to simply inflate their damage claims in an attempt to avoid the arbitration provision. The irony of that approach is illustrated by the fact that the carve-out for small claims was intended to provide consumers an informal, speedy, and convenient alternative to arbitration if they so desired. See Jenkins v. First American Cash Advance of Georgia, LLC, 400 F.3d 868, 879 (11th Cir. 2005)("We note, moreover, that the provision providing access to small claims tribunals was intended to benefit, not injure, consumers.").[5]

Second, Strawn and Staton contend that the arbitration

---

[5] Strawn and Staton further contend that West Virginia Code section 46A-6-106(a) creates exclusive jurisdiction in the circuit court, not the magistrate court, when WVCCPA claims are instituted. The cited provision merely states in permissive terms that one aggrieved by a violation of the WVCCPA "may bring an action in the circuit court . . . ." W. Va. Code § 46A-6-106(a). Additionally, West Virginia Code section 50-2-1 provides that "[e]xcept as limited herein and in addition to jurisdiction granted elsewhere to magistrate courts, such courts shall have jurisdiction of all civil actions wherein the value or amount in controversy or the value of property sought, exclusive of interest and cost, is not more than five thousand dollars." W. Va. Code § 50-2-1. The court declines to expand the permissive language in section 46A-6-106(a) beyond that apparently contemplated by the Legislature.

provision limits their statutory entitlement to attorney fees under the WVCCPA.  Strawn and Staton note the terms of the arbitration provision that require AT&T to (1) pay their attorney fees if their recovery meets or exceeds the amount of their claims, and (2) pay double the attorney fees if the claim is for $5,000 or less and they recover more than AT&T's last settlement offer.  They contend that, unencumbered by the foregoing requirements, one need only qualify as a prevailing party under the WVCCPA in order to qualify for attorney fees and costs.

The argument overlooks the fact that the arbitration provision contemplates a "right to attorney's fees . . . in addition to any right that . . . [they] may have under applicable law."  (See, e.g., ex. B-2, Def.'s Mot. to Comp. Arbit.). Additionally, as noted, the costs of the arbitration are essentially paid by AT&T.[6]  In sum, Strawn and Staton have not demonstrated any basis to invalidate the arbitration provision.[7]

---

[6]Strawn and Staton also assert the premium provision is illusory because, inasmuch as the jurisdictional maximum of the magistrate court is $5,000, a prevailing customer would receive no more than $5,000 as a premium if the award exceeds the last settlement offer from AT&T.  The argument misses the point of the premium.  The $5,000, together with the doubling of the attorney fees, is best described as the outer limit of a potential windfall that further protects the customer from malfeasance by the superiorly positioned party.  It would be inappropriate to use this unusually customer-centered provision to invalidate the arbitration provision on unconscionability grounds.

[7]In the alternative, Strawn and Staton request that they be
(continued...)

14

III.

Based upon the foregoing discussion, the court ORDERS as follows:

1. That AT&T's renewed motion to compel arbitration and dismiss the complaint pursuant to the FAA be, and it hereby is, granted except as set forth below; and

2. That this action be, and it hereby is, retired to the inactive docket pending the conclusion of the arbitral proceedings, at which time the parties are directed to submit an agreed final order of dismissal.

The Clerk is directed to forward a copy of this written opinion and order to all counsel of record.

DATED:  January 20, 2009

_____
John T. Copenhaver, Jr.
United States District Judge

---

[7](...continued)
permitted to proceed on a class wide basis during the arbitration proceedings. The arbitration provision does not contemplate that option.